```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
YUESAI LIN,                                                            :
                                                                       :
                                                                       :
                        Plaintiff,                                     :
                                                                       :
          -v-                                                          :     25 Civ. 3848 (JPC)
                                                                       :
KRISTI NOEM, et al.,                                                   :     OPINION AND ORDER
                                                                       :
                        Defendants.                                    :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Yuesai Lin brings this action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, against Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; Joseph B. Edlow, in his official capacity as Director of U.S. Citizenship and Immigration Services ("USCIS")[1]; Mollie Isaacson, in her official capacity as Director of USCIS's Newark Asylum Office; Kash Patel, in his official capacity as Director of the Federal Bureau of Investigation; and Pamela Bondi, in her official capacity as Attorney General of the U.S. Department of Justice (collectively, "Defendants"). Plaintiff, whose asylum proceedings have been pending with USCIS since February 2023, claims that Defendants have failed to adjudicate her asylum application within a reasonable period of time in violation of their nondiscretionary duties under the Immigration and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Director Edlow was automatically substituted as a Defendant for Kika Scott, the former Acting Director of USCIS, upon his confirmation and swearing-in as Director of USCIS in July 2025. *See* https://www.uscis.gov/about-us/organization/leadership/joseph-b-edlow-director-us-citizenship-and-immigration-services (last visited Oct. 28, 2025). Therefore, the Clerk of Court is respectfully directed to substitute Joseph B. Edlow for Kika Scott in the caption of this case.

Nationality Act ("INA"), 8 U.S.C. § 1158(d)(5), and the APA. Plaintiff accordingly asks this Court to compel Defendants to adjudicate her application without further delay.

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that this Court lacks subject matter jurisdiction over Plaintiff's mandamus claim and that Plaintiff has failed to state a claim for relief under the APA. The Court agrees. So for the reasons that follow, the Court grants Defendants' motion and dismisses the Complaint in its entirety.

## I. Background[2]

### A.   Statutory and Regulatory Framework

The INA permits any noncitizen "who is physically present in the United States or who arrives in the United States . . . irrespective of . . . status" to apply for asylum, subject to certain exceptions not applicable here. 8 U.S.C. § 1158(a)(1). The timeline for processing asylum applications is governed by Section 1158(d)(5), which provides that—absent exceptional circumstances—the initial interview of a prospective asylee shall begin within forty-five days of

---

[2] The following facts are drawn from the Complaint, Dkt. 5 ("Compl."), and are assumed to be true for purposes of this Opinion and Order. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenging jurisdiction based on the complaint and any attached exhibits, a court assumes as true all facts from the complaint and the attached exhibits and construes all reasonable inferences in the plaintiff's favor); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint."). "The Court also takes judicial notice of facts not subject to reasonable dispute, including those related to USCIS's asylum adjudication procedures, as set forth in documents from the agency's official website." *Konde v. Raufer*, No. 23 Civ. 4265 (JPC), 2024 WL 2221227, at *1 n.1 (S.D.N.Y. May 16, 2024); *accord Chang v. Jaddou*, No. 24 Civ. 6565 (JPC) (SLC), 2025 WL 2015143, at *1 n.1 (S.D.N.Y. July 18, 2025); *see also Kravitz v. Tavlarios*, No. 20-2579-cv, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021) ("District Courts may take judicial notice of facts 'not subject to reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2))).

the application's filing and that the application shall be finally adjudicated within 180 days of its filing. *Id.* § 1158(d)(5)(A)(ii)-(iii). But the INA also contains a "[n]o private right of action" clause, which provides that "[n]othing in [Section 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

**B.     USCIS's Review of Asylum Applications**

The Asylum Division of USCIS adjudicates asylum applications pursuant to the INA. *See* Andorra Bruno, *Immigration: U.S. Asylum Policy*, Cong. Rsch. Serv., 4 (Feb. 19, 2019), https://www.congress.gov/crs-product/R45539. Since January 31, 2018, USCIS has adjudicated asylum applications on a "last in, first out" ("LIFO") basis, "schedul[ing] asylum interviews for recent applications ahead of older filings." U.S. Citizenship & Immigr. Servs., *USCIS to Take Action to Address Asylum Backlog*, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (last updated Feb. 2, 2018). This approach scheduled interviews based on the following priority: (1) applications whose interview had been rescheduled at the request of the applicant or due to the needs of USCIS; (2) applications that have been pending twenty-one days or fewer; and (3) all other pending affirmative asylum applications starting with newer filings and working back towards older filings. *Id.* USCIS reinstituted this LIFO policy, which previously was used for twenty years from 1995 to 2014, "to stem the growth of the agency's asylum backlog," to "deter those who might try to use the existing backlog as a means to obtain employment authorization,"[3] and to "identify frivolous, fraudulent or otherwise non-meritorious

---

[3] An alien whose asylum application has been pending for 150 days is eligible to apply for employment authorization, renewable in two-year increments for asylum-based applications filed before September 27, 2023, and five-year increments for those filed after that date. *See* 8 C.F.R. § 208.7(a)-(b); U.S. Citizenship & Immigr. Servs., *USCIS Increases Employment Authorization Document Validity Period for Certain Categories*, https://www.uscis.gov/newsroom/alerts/uscis-

3

asylum claims earlier and place those individuals into removal proceedings." *Id.* There is no clear timeline for asylum applicants to know when their case will be adjudicated, but applicants are permitted to request expedited adjudication in certain circumstances. *See* U.S. Citizenship & Immigr. Servs., *Expedited Request: How to Make an Expedite Request* https://www.uscis.gov/forms/forms-information/how-make-expedite-request (last updated Mar. 31, 2025).

While Plaintiff's asylum application was pending, USCIS adjusted its method for scheduling asylum interviews by instituting a two-track system, which continued to "seek[] to prioritize the most recently filed affirmative asylum applications when scheduling affirmative asylum interviews." U.S. Citizenship & Immigr. Servs., *Affirmative Asylum Interview Scheduling*, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last updated Mar. 29, 2024); *accord Chang*, 2025 WL 2015143, at *2. On the first track, USCIS generally schedules interviews in the same LIFO order as under the January 2018 policy. *See Affirmative Asylum Interview Scheduling*, *supra*. And on the second track, "USCIS assigns some of its asylum officers to complete affirmative asylum applications pending in the backlog, starting with the oldest applications and working forward," which "permits some of the oldest pending applications to be completed in chronological order." *Id.* Urgent requests to schedule interviews outside of the two-track priority order may be considered on a case-by-case basis. *See id.* Still, the two-track system "seeks to prioritize the most recently filed affirmative asylum applications when scheduling affirmative asylum interviews" in order to "reduce[] the incentive to file for asylum solely to obtain employment authorization." *Id.*; *accord id.* ("The aim

---

increases-employment-authorization-document-validity-period-for-certain-categories     (last updated Sept. 27, 2023).

4

is to deter individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications.").

C. **Facts and Procedural History**

Plaintiff, a citizen of the People's Republic of China, resides in the Bronx, New York. Compl. ¶ 12. On or about February 21, 2023, Plaintiff filed a Form I-589, Application for Asylum. *Id.* ¶¶ 14-19, Exh. 1. Her application remains pending before the USCIS Newark Asylum Office. *Id.* ¶ 19. Over the past two-and-a-half years, "Plaintiff has made numerous status inquiries with USCIS." *Id.* ¶ 17. To date, an initial interview on Plaintiff's asylum application has yet to be scheduled. *See* U.S. Citizenship & Immigr. Servs., Case Status Online, https://egov.uscis.gov (Plaintiff's receipt number last searched on October 27, 2025); Compl. ¶ 2 (showing receipt number of Plaintiff's asylum application). As a result, Plaintiff alleges that Defendants "have improperly withheld action on the application for an unreasonable period of time, to the detriment of Plaintiff." Compl. ¶ 2.

Plaintiff filed suit on May 8, 2025, about twenty-six months after she initiated asylum proceedings. Dkt. 1. In the Complaint, Plaintiff alleges that Defendants "owe[] Plaintiff a duty to adjudicate her I-589 Application, pursuant to the INA and its implementing regulations, and have unreasonably failed to perform that duty." Compl. ¶ 20. Raising claims under the Mandamus Act and the APA, Plaintiff urges this Court to "[c]ompel the Defendants . . . to take all appropriate action to adjudicate the Plaintiff's I-589 Asylum Application without further delay." *Id.* at 12.

On July 30, 2025, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules

5

of Civil Procedure. Dkts. 19-22. Plaintiff opposed the motion on August 26, 2025, Dkt. 23 ("Opposition"),[4] and Defendants replied on September 8, 2025, Dkt. 24 ("Reply").[5]

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

---

[4] Plaintiff's opposition brief purports to cite three cases in support of her argument, in addition to attempting to distinguish two cases cited in Defendants' moving brief. For two of those supposed cases, however, the citations are not valid and Plaintiff's counsel presents quotations that do not appear to exist, suggesting reliance on an artificial intelligence tool. Counsel cites "*Chen v. Mayorkas*, 2022 WL 623046, at *5 (D. Mass. Mar. 3, 2022)" for the quotation: "An agency's failure to act when it has a clear legal duty to do so is precisely the type of conduct mandamus relief is meant to address." Opposition at 2-3. Yet that Westlaw citation is for a bill introduced in the Kentucky General Assembly, and the quotation does not seem to appear in any decision available on Westlaw. Similarly, Plaintiff's counsel cites "*Beltran v. U.S. Dep't of Homeland Sec.*, 2019 WL 245049, at *4 (S.D.N.Y. Jan. 17, 2019)" for the quotation: "The availability of a discretionary process for expedited review does not absolve the agency of its statutory duty to act within a reasonable time." Opposition at 4. This Westlaw citation, however, is for a bill introduced in the House of Representatives for Hawaii, and the quotation also does not seem to appear in any decision available on Westlaw. Defendants pointed out in their reply brief that neither case citation appears to be correct. Reply at 1-2 n.1, 4 n.2. While Plaintiff filed a sur-reply brief—which the Court disregards, *see infra* n.5—Plaintiff failed to address these problematic citations in that brief. *See generally* Dkt. 25. (And while the other case that Plaintiff cites, *Islam v. Heinauer*, 32 F. Supp. 3d 1063 (N.D. Cal. 2014), does at least exist, that decision does not support the proposition for which Plaintiff cites the case. *See* Opposition at 3; Reply at 3-4.)

By November 10, 2025, Plaintiff's counsel is directed to submit a letter to the Court explaining the basis for his citations to the purported decisions in *Chen* and *Beltran* and their associated quotations, and showing cause for why the Court should not issue sanctions for his apparent reliance on non-existent caselaw.

[5] Plaintiff subsequently filed a sur-reply on September 9, 2025. Dkt. 25. In accordance with the undersigned's Individual Rules governing supplemental memoranda of law, the Court disregards Plaintiff's sur-reply as being filed "without prior permission of the Court." Rule 2.B of the Individual Rules and Practices in Civil Cases of Hon. John P. Cronan; *see, e.g.*, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 369-70 (S.D.N.Y. 1997) ("Because supplemental submissions are not authorized by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, or this Court's Individual Rules, and because this Court did not grant [the plaintiff] permission to supplement its opposition papers, this Court will not consider [the plaintiff's] supplemental papers in resolving the instant motions.").

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff must "establish[] by a preponderance of the evidence that subject matter jurisdiction exists" to defeat a Rule 12(b)(1) motion.  *Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025).  There are two types of Rule 12(b)(1) motions: facial and factual.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Facial challenges are "based solely on the allegations of the complaint or the complaint and exhibits attached to it," *id.* at 56, while factual challenges may "proffer[] evidence beyond the Pleading," *id.* at 57.  Where, as here, the Rule 12(b)(1) motion raises a facial challenge, the Court accepts as true all material factual allegations from the complaint and construes in favor of the plaintiff all reasonable inferences.  *Amidax Trading Grp.*, 671 F.3d at 145.

**B.     Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it "need not consider conclusory allegations or legal conclusions couched as factual allegations," *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).

### III.  Discussion

In moving to dismiss the Complaint in its entirety, Defendants contend that Plaintiff has failed to state a cognizable claim under the APA and that the Court lacks jurisdiction over Plaintiff's mandamus claim.  *See* Dkt. 20 ("Motion") at 10-19.  The Court agrees with both contentions.

**A.     APA Claim**

The Court first examines whether Plaintiff has plausibly alleged that Defendants' delay in adjudicating her asylum application is unreasonable as a matter of law.  Compl. ¶¶ 25, 27-28.  The APA provides for judicial review of agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  To determine reasonableness, "[courts] look to the source of delay— e.g., the complexity of the [agency adjudication] as well as the extent to which the defendant[s] participated in delaying the proceeding."  *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999).  In cases where the plaintiff seeks to compel action by immigration authorities, courts in this District apply the six-factor test articulated in *Telecommunications Research & Action Center v. FCC* ("*TRAC*" and the "*TRAC* Factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks omitted); *see also NRDC v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *TRAC* as "setting forth test for determining if agency action is

unreasonably delayed").[6]

Importantly, "the Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)). But here, the passage of time is the sole factual basis Plaintiff pleads with any specificity in claiming that the adjudication of her asylum application is unreasonably delayed. *See* Compl. ¶¶ 18-22, 25, 27-28. Such an allegation "is plainly insufficient to support a cognizable APA claim," *Konde*, 2024 WL 2221227, at *3, and Plaintiff has cited no case law to the contrary. In fact, courts in this Circuit have consistently held that a "delay [in processing an immigration application] of less than four years is reasonable on its face," while "delays exceeding six years are often found unreasonable." *Aydemir v. Garland*, No. 22 Civ. 100 (PAC), 2022 WL 4085846, at *4 (S.D.N.Y. Sep. 6, 2022) (collecting cases); *see, e.g.*, *Xu v. Cissna* ("*Fangfang Xu*"), 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding that a three-year delay is "well within the range of time that other courts have found to not constitute unreasonable delay"); *Xu v. Nielsen* ("*Xiaobin Xu*"), No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (finding that a delay of a little less than five years is "substantial" but not "unreasonable"); *Boussana v. Johnson*, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015) (finding that an eight-year delay is "unreasonable as a matter of law"). The facts pled in Plaintiff's Complaint—which alleges an under-three-year delay—"do not warrant a different outcome here." *Kanyan v. USCIS*, No. 24

---

[6] While the *TRAC* factors are "fact-sensitive," courts "often apply them" at the "motion-to-dismiss stage" so long as they faithfully "constru[e] the facts in the light most favorable" to the plaintiffs. *Cohen v. Jaddou*, No. 21 Civ. 5025 (PAC), 2023 WL 2526105, at *3 (S.D.N.Y. Mar. 15, 2023) (internal quotation marks omitted). The Court follows that well-trod path here.

Civ. 8564 (RPK), 2025 WL 1489807, at *3 (E.D.N.Y. May 22, 2025).

Applying the *TRAC* Factors "further warrants dismissal of" Plaintiff's APA claim, as the delay in adjudicating Plaintiff's application has not been unreasonable as a matter of law. *Konde*, 2024 WL 2221227, at *3. Under the first *TRAC* Factor, the Court assesses whether "the time agencies take to make decisions" is governed by a "rule of reason." *TRAC*, 750 F.2d at 80. This Court remains aligned with "the chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason." *Konde*, 2024 WL 2221227, at *3 (collecting cases). As discussed, the LIFO scheduling system is designed to address the mounting backlog of pending asylum applications, to deter efforts to exploit that backlog as a means of obtaining employment authorization, and to filter out frivolous or fraudulent claims at the outset. *See supra* section I.B; *see also* Motion at 7-8, 14. Plaintiff does not argue that the LIFO policy itself is unreasonable, or that the policy fails to serve the purposes identified by Defendants in their motion to dismiss. *See generally* Compl.; Opposition. Indeed, Plaintiff does not address the merits of the LIFO policy at all. *See generally* Compl.; Opposition. The same is true of the "two-track system with LIFO review under the first track," and the Court "discerns no basis to find that these policies defy reason." *Chang*, 2025 WL 2015143, at *6.

The second *TRAC* Factor informs the first by asking whether Congress has provided a "statutory scheme" that "may supply content for the rule of reason." *TRAC*, 750 F.2d at 80. Congress set forth such a timetable in the INA, which contemplates a final asylum adjudication within 180 days of filing, absent exceptional circumstances. 8 U.S.C. § 1158(d)(5)(A)(iii). But in that same breath, Congress expressly provided that the agency's failure to meet this timetable does not alone violate an alien's substantive or procedural rights or give rise to a cause of action. *Id.* § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural

10

right or benefit that is legally enforceable against the United States or its agencies or officers or any other person."). "Given Congress's decision that the schedule it set forth would not be binding, this Court cannot give that schedule binding effect here." *Liu v. Wolf*, No. 19 Civ. 410 (PGG), 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 2020). Accordingly, the timetable contained in Section 1158(d)(5)(A)(iii) "do[es] not interfere with finding the LIFO rule provides a rule of reason." *Chen v. Wolf*, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020); *see also Fangfang Xu*, 434 F. Supp. 3d at 53 (declining to "ascribe much significance to this timetable" because it "is not mandatory").

The third and fifth *TRAC* Factors evaluate the nature and extent of the interests prejudiced by the delayed adjudication, particularly the impact on human health and welfare.[7] *See TRAC*, 750 F.2d at 80. Plaintiff alleges only in general terms that she "has suffered emotional, economic, and legal hardship as a result" of the inaction in her asylum case. Opposition at 3; *see generally* Compl. Even crediting Plaintiff's contention that the delay "has caused inordinate and unfair amounts of stress, expense, and hassle," Compl. ¶ 20, "this sort of prejudice[, which] is inherent in the asylum application process," is insufficient to grant relief, *Fangfang Xu*, 434 F. Supp. 3d at 54 (citation omitted). Plaintiff has not pled particularized facts demonstrating a cognizable injury to human health or welfare arising from the delay at hand, nor has she "explained why the Court should compel USCIS to expedite her asylum application in particular." *Konde*, 2024 WL 2221227, at *4. To the contrary, Plaintiff acknowledges that she is permitted to reside in the United States and hold a renewable Employment Authorization Document during the pendency of her asylum application. Compl. ¶ 12, Exh. 3; *see* 8 U.S.C. § 1158(d)(2). Even construing the facts in the light

---

[7] "Courts generally analyze the third and fifth [*TRAC*] factors together." *Boussana*, 2015 WL 3651329, at *9.

most favorable to Plaintiff, the third and fifth *TRAC* Factors do not weigh in her favor.  *See Chang*, 2025 WL 2015143, at *7; *Konde*, 2024 WL 2221227, at *4.

The fourth *TRAC* Factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  Put plainly, the Court must examine whether "compelling [USCIS] to focus its attention on one case would force it to shift resources away from equally deserving applicants."  *Zhang v. Wolf*, No. 19 Civ. 5370 (DLI), 2020 WL 5878255, at *5 (E.D.N.Y. Sep. 30, 2020) (internal quotation marks omitted).  A showing that the plaintiff "has been treated differently than similarly situated asylees is, if not a prerequisite, at least an important factor in deciding whether a delay was unreasonable."  *Pesantez v. Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655, at *4 (E.D.N.Y. Sep. 17, 2015).  Here, Plaintiff has failed to justify why the Court should single out her case for expedited resolution to the prejudice of those who have been waiting as long or longer.  *Cf. Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that the plaintiff's "request for adjudication disregards entirely the fact that there are 160,000 applications pending aside from his own").  Nor does Plaintiff argue that similarly situated applicants have received expedited treatment in a manner that makes Plaintiff's wait unreasonable.  Should the Court grant Plaintiff the relief she seeks, Plaintiff "would simply move to the 'head of the line,' leapfrogging other asylum applicants, and undermining USCIS's reasons for implementing the LIFO system."  *Liu*, 2020 WL 2836426, at *9.  Such leapfrogging "would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."  *Fangfang Xu*, 434 F. Supp. 3d at 55; *see Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (refusing to grant relief "where a judicial order putting [the plaintiff] at the head of the queue would simply move all others back one space and produce no

net gain," even if all other *TRAC* Factors suggest that the delay is unreasonable (internal quotation marks omitted)); *Xiaobin Xu*, 2018 WL 2451202, at *2 ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit."). The Court thus finds "no basis to single out Plaintiff's case for expedited resolution, where so many are deserving of prompt adjudication." *Konde*, 2024 WL 2221227, at *4.

Plaintiff's insistence that she seeks "legal accountability" rather than "special treatment," Opposition at 4, similarly fails to persuade. USCIS's nondiscretionary duty to adjudicate applications does not include accountability to Plaintiff for the agency's discretionary policy decisions about allocating adjudicatory resources. Plaintiff "seeks merely a judicial reordering of USCIS's competing priorities, and the fourth *TRAC* Factor favors USCIS where, as here, granting [Plaintiff] the relief [she] seeks would only harm other applicants who are equally deserving of prompt adjudication." *Chang*, 2025 WL 2015143, at *7.

At this stage, and on the facts as presented, the Court can offer no relief under the APA. The Court therefore grants Defendants' motion to dismiss Plaintiff's APA claim. This dismissal "is without prejudice to renewal," should Plaintiff's asylum application "remain pending to an unreasonable degree." *Konde*, 2024 WL 2221227, at *5.

**B.     Mandamus Claim**

The Court next considers Defendants' jurisdictional challenge to Plaintiff's claim under the Mandamus Act, 28 U.S.C. § 1361. Compl. ¶ 23. The Mandamus Act provides district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The precise duty that the plaintiff seeks to compel "must be subject to positive command, plainly

described, and free from doubt." *Keane v. Chertoff*, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006) (internal quotation marks omitted). That is, to establish jurisdiction and obtain relief under the Mandamus Act, the plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008). "Mandamus jurisdiction is closely related to the merits of whether a writ of mandamus should issue." *Aydemir*, 2022 WL 4085846, at *6 (internal quotation marks omitted); *accord Fangfang Xu*, 434 F. Supp. 3d at 56 n.6 (noting that courts have dismissed "similar mandamus claims arising out of delayed adjudications of asylum applications" interchangeably under Rules 12(b)(1) and 12(b)(6)); *cf. Zhang*, 2020 WL 5878255, at *3-4 (sustaining jurisdiction but dismissing the plaintiffs' mandamus claim on the merits).[8]

Plaintiff's mandamus claim falls short for two independent reasons. First, Plaintiff lacks a "clear right to the relief sought." *Benzman*, 523 F.3d at 133; *accord Kanyan*, 2025 WL 1489807, at *4 ("Plaintiff has not plausibly alleged that the INA provides him a clear right to relief to adjudication of his application within any particular time frame."). While her Complaint is not especially precise, Plaintiff appears to allege that Defendants owe her a duty to adjudicate her asylum application "pursuant to the INA and its implementing regulations," Compl. ¶ 26, a duty which "arises from . . . the Immigration and Nationality Act, 8 U.S.C. § 1158(d)(5)(A)(iii),"

---

[8] Defendants alternatively contend that Plaintiff has failed to state a claim for mandamus relief. Motion at 12 n.5. When presented with a motion to dismiss under both Rules 12(b)(1) and 12(b)(6), "the Court should consider the jurisdictional challenge to a given claim first." *Narcisse v. Progressive Cas. Ins. Co.*, 778 F. Supp. 3d 597, 603 (S.D.N.Y. 2025). The distinction, however, is largely academic here, as regardless of "the proper avenue of dismissal for such mandamus claims arising out of delayed adjudications of asylum applications that fail to establish a clear right," Plaintiff "has failed to identify any instance, and the Court is not aware of any, in which a comparable claim for mandamus relief has survived a motion to dismiss in this Circuit." *Ujka v. Mayorkas*, No. 24 Civ. 4801 (KPF), 2025 WL 2419545, at *4 n.8 (S.D.N.Y. Aug. 21, 2025).

Opposition at 2. But a mandamus claim based on the timelines set forth in Section 1158(d)(5) cannot survive because, as discussed, Section 1158(d)(7) "bars Plaintiff from claiming any legally enforceable right to have her application adjudicated within the provided timeframes." *Fangfang Xu*, 434 F. Supp. 3d at 56 (citation modified); *see supra* I.A, III.A. Since "mandamus relief is only available where a plaintiff seeks to compel an agent of the United States to perform a duty owed to the plaintiff, and is not available to compel compliance with a statutory obligation when that statute disclaims a private right of action, this Court would lack jurisdiction to issue mandamus relief on account of Defendant[s'] failure to meet Section 1158(d)(5)'s deadlines." *Konde*, 2024 WL 2221227, at *5 n.5; *accord Fangfang Xu*, 434 F. Supp. 3d at 57; *Pesantez*, 2015 WL 5475655, at *2.

Second, this court lacks mandamus jurisdiction because the APA offers an adequate alternative remedy. *See, e.g.*, *Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (affirming the district court's dismissal of a mandamus claim that duplicated claims brought under the APA); *Konde*, 2024 WL 2221227, at *5 ("Plaintiff has an available remedy under the APA, thus depriving this Court of subject matter jurisdiction over her mandamus claim."); *Ruan v. Wolf*, No. 19 Civ. 4063 (ARR), 2020 WL 639127, at *3 (E.D.N.Y. Feb. 11, 2020) ("[I]n the context of a suit to compel agency action, the avenues of relief that the Mandamus Act and the APA provide are essentially the same." (internal quotation marks removed)). The very existence of an adequate alternative remedy deprives the Court of subject matter jurisdiction; "[t]his is true even though Plaintiff failed to adequately plead that alternative remedy." *Cohen*, 2023 WL 2526105, at *7; *accord Aydemir*, 2022 WL 4085846, at *7 (denying mandamus relief where the plaintiff "simply has not stated an adequate claim to warrant [granting] alternative remedy" under the APA). The Court thus dismisses without prejudice Plaintiff's mandamus claim for lack of subject matter

jurisdiction.

## IV. Conclusion

For the above reasons, the Court grants Defendants' motion to dismiss and dismisses without prejudice Plaintiff's Complaint in its entirety. As discussed, the dismissal of Plaintiff's APA claim is without prejudice to renewal should her application remain pending to an unreasonable degree. The Clerk of Court is respectfully directed to issue judgment in favor of Defendants.[9] The Court, however, retains jurisdiction to resolve whether sanctions should be imposed on Plaintiff's counsel. *See supra* n.4.

SO ORDERED.

Dated: October 28, 2025
       New York, New York

                                              _____
                                              JOHN P. CRONAN
                                              United States District Judge

---

[9] Because no immediate amendment to the Complaint could cure the barriers to relief discussed herein, the Court denies leave to amend as futile. *See Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) ("Here, granting leave to amend would be futile as the barriers to relief for [the plaintiff's] claims cannot be surmounted by reframing the complaint.").